**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

CONNIE HARMON, Individually
and as Administratrix of the Estate
of Richard Keith Harmon, Deceased,

        Plaintiff,

v.                              CIVIL ACTION NO. 3:04-1230

AMERICAN ELECTRIC POWER
SERVICE CORPORATION, d/b/a
AMERICAN ELECTRIC POWER
COMPANY PHILLIP SPORN PLANT,
and UNITED MINE WORKERS OF AMERICA
INTERNATIONAL; UNITED MINE WORKERS
OF AMERICA, DISTRICT 17; and UNITED MINE
WORKERS OF AMERICA, LOCAL NO. 5396,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending are the motions of the defendants to dismiss or, in the alternative, for summary judgment; the motion of the defendant United Mine Workers International, joined by the other defendants, to dismiss or for summary judgment on the amended complaint; the renewed motion to dismiss of the defendants United Mine Workers, District 17 and Local No. 5396; the motion of the plaintiff for leave to file a supplemental memorandum of law in opposition to the defendants' motions; and the motion of the defendant American Electric Power Company to strike the plaintiff's supplemental memorandum.

    Because the parties have submitted matters outside the pleadings, pursuant to Federal Rule of Civil Procedure 12(b), the Court will treat the defendants' primary motions as motions for

summary judgment under Rule 56. The plaintiff's supplemental memorandum of law largely reiterates her earlier filings and includes an affidavit in support of her position. Having reviewed the memorandum, the Court finds that allowing this submission would not unduly prejudice the defendants. Therefore, in an abundance of caution to ensure that her claims are thoroughly considered, the Court **GRANTS** the plaintiff's motion to file a supplemental memorandum of law (Doc No. 33) and **DENIES** the defendant's motion to strike the memorandum (Doc. No. 35). For the following reasons, the defendants' motions for summary judgment on the amended complaint (Doc. Nos. 22 and 28) are **GRANTED IN PART** and the prior motions (Doc. No. 5) are **DENIED** as moot.

## I. Background

The plaintiff, Connie Harmon, brought this action in her individual capacity and as administratrix of the estate of Richard Keith Harmon. Mr. Harmon was an employee of the defendant American Electric Power Service Corporation, doing business as American Electric Power Company Philip Sporn Plant ("AEP") from March 1977 until his termination on June 20, 2002. During his employment, Mr. Harmon was represented by the defendant unions, United Mine Workers of America International, District 17 and Local No. 5396 (collectively, "the union"). This lawsuit arises from the circumstances surrounding Mr. Harmon's termination.

On January 11, 2002, AEP issued a "last chance agreement" to Mr. Harmon, citing excessive absenteeism. This agreement indicated that Mr. Harmon would be terminated if he violated its conditions or other standards of conduct. On June 19, 2002, Mr. Harmon left work early, stating that he was ill. Representatives of AEP went to Mr. Harmon's home later that day and took him to a

clinic to take an alcohol breath test. The test was not completed, a situation the plaintiff attributes to Mr. Harmon's physical condition. The following day, AEP discharged Mr. Harmon, indicating that he had "refused to cooperate in the administration of a reasonable cause alcohol test."

Mr. Harmon and the union initiated a grievance, which proceeded through the third step of the procedure outlined in the collective bargaining agreement.[1] The third step, which is the final step before a grievance is referred to arbitration, was a meeting on July 15, 2002, attended by Mr. Harmon and representatives of the union and AEP. After the meeting, Mr. Harmon submitted a letter indicating his understanding that in exchange for his voluntary resignation, the company would not contest his claim for unemployment benefits. The union took no further action on this matter, and, before his death on January 14, 2003, Mr. Harmon did not initiate any internal union charges regarding the end of his employment or the union's processing of his grievance against AEP.

On June 18, 2004, the plaintiff, Mr. Harmon's widow, commenced this lawsuit, a hybrid action brought under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The plaintiff has since filed an amended complaint, adding state-law claims of wrongful termination, conspiracy and discrimination. The defendants move for dismissal or for summary judgment, challenging the plaintiff's standing and failure to exhaust internal union remedies and asserting the statute of limitations as a defense to the Section 301 claims.

---

[1] Although the plaintiff asserted in her amended complaint that the union refused to file a grievance, the defendants have submitted a copy of the defendant's handwritten grievance form. In addition, the plaintiff apparently concedes that a grievance was filed and processed through the third step, as stated in the affidavit of Charles M. Dalton accompanying her supplemental memorandum.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. Analysis

The parties disagree on many details, but there is no dispute as to any fact material to the dispositive issues in this case. Accordingly, summary judgment is appropriate. The plaintiff asserts claims involving state and federal law and the defendants raise multiple defenses they believe warrant judgment in their favor. In an effort to address the complex and overlapping issues in the

clearest manner, the Court will first address the issue of whether the state-law claims are preempted by federal labor law. Then, the Court will consider the defendants' arguments regarding standing, the statute of limitations and exhaustion of union remedies.

**Preemption**

The defendants contend that the plaintiff's state-law claims necessarily require interpretation and application of the collective bargaining agreement and are consequently preempted by federal labor law.

Section 301 of the Labor Management Relations Act establishes federal jurisdiction over employment disputes covered by a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). Under the "well-pleaded complaint rule," federal courts have jurisdiction based on the existence of a federal question evident on the face of the plaintiff's complaint, not on the basis of any defense. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The doctrine of complete preemption is an exception to this rule. *See id.* In complete preemption cases, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Id.* at 393 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Thus, state "claims founded directly on rights created by the collective-bargaining agreement, and also claims 'substantially dependant on analysis of a collective bargaining agreement' " are preempted by § 301 under the doctrine of complete preemption. *Id.* at 394 (citing *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n.3 (1987)). In that circumstance, "federal labor law principles . . . must be employed

to resolve the dispute." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 406 (1988) (footnote omitted).

To determine whether the state-law claims should be preempted by § 301 under the complete preemption doctrine, the Court must analyze the elements of the individual causes of action. *See id.* at 406; see also *Salmons v. Prudential Ins. Co.*, 48 F.Supp.2d 620, 624 (S.D.W.Va. 1999)(citing *McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 535 (4th Cir. 1991)). The plaintiff has asserted three state-law claims, for wrongful termination, conspiracy and discrimination. If resolution of these claims requires interpretation of the collective bargaining agreement, then the claims are preempted by § 301. *See Allis-Chalmers Corp.,* 471 U.S. at 211-212.

The plaintiff's first state-law claim is for wrongful discharge. West Virginia follows the employment-at-will doctrine, meaning the relationship may be terminated at the will of the employer or employee for any reason, or for no reason. *Wright v. Standard Ultramarine & Color Co.*, 90 S.E.2d 459, 468 (1955), *Cook v. Heck's Inc.*, 342 S.E.2d 453, 457 (1986). State courts have applied a narrow exception to this policy when an employee is discharged in violation of substantial public policy. *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270, 275 (1978). In her complaint, the plaintiff contends that the test administered to Mr. Harmon violated public policy and the collective bargaining agreement. As such, she argues, there was no "proper or legitimate reason" for his dismissal, as the agreement requires.

The West Virginia Supreme Court of Appeals has found that random drug testing violates an individual's right to privacy and is therefore against the state's public policy. *Twigg v. Hercules Corp.*, 406 S.E.2d 52, 55 (1990). The court also applied two exceptions, determining that drug testing would not violate public policy based on the potential intrusion of an employee's privacy if

-6-

it was conducted because of "reasonable good faith objective suspicion of an employee's drug usage or where an employee's job responsibility involves public safety or the safety of others." *Id*. Because the test at issue in this case was not a random test but a test based on what the employer claims was reasonable cause, it does not establish, as the plaintiff argues, a "per se violation of decedent's privacy rights" and therefore a clear violation of public policy.

Determining whether the employer's action in terminating Mr. Harmon was wrongful would require not only consideration of the reasonableness of the employer's suspicion as a basis for the test but also evaluation of the employment relationship and interpretation of the collective bargaining agreement, as the plaintiff seems to acknowledge in her contention that the test was in contravention of the agreement. The Fourth Circuit addressed a similar issue in a case in which an employee brought a state claim against an employer for intentional infliction of emotional distress. *Foy v. Giant Food Inc.*, 298 F.3d 284 (2002). The claim was preempted because, the court concluded, its resolution required an inquiry into what the employer's obligations were under the collective bargaining agreement. "Whether an employer's actions in dealing with and terminating an employee are wrongful is determined not in the abstract but necessarily by reference to the collective bargaining agreement which governs the employment relationship." *Id.* at 288. The same is true in this case. Because analysis of this state-law claim requires construction of the collective bargaining agreement, it is preempted.

In support of her conspiracy claim, the plaintiff alleges that the defendant unions, "in breach of their statutory duty of fair representation owed to plaintiff's decedent, ... conspired with defendant AEP to permit plaintiff's discharge to stand, although there was no proper or legitimate reason therefor." The plaintiff's own phrasing strongly suggests that this is not an independent state-law

claim but rather an extension of the federal claim for breach of the duty of fair representation. Even if it were an independent claim, it would be preempted under these circumstances. Under West Virginia law, civil conspiracy involves "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Dixon v. American Indus. Leasing Co.*, 253 S.E.2d 150, 152 (1979), *citing* 15A C.J.S. Conspiracy § 1(1). "The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." *Id.*, *citing* 16 Am.Jur.2d, Conspiracy, § 44. As in the analysis of the wrongful termination claim, a determination of the alleged wrongful acts of the defendants here would require interpretation of the collective bargaining agreement to ascertain the defendants' obligations to the plaintiff. Accordingly, this claim is also preempted.

The final state-law claim in the plaintiff's complaint alleges discrimination against Mr. Harmon. Federal law does not preempt a claim alleging discriminatory discharge when "the claim turns on the employer's motivation for firing the plaintiff, a question of fact that does not depend on an interpretation of the CBA." *Harless v. CSX Hotels, Inc.*, 389 F.3d 444, 449 (2004). Although the plaintiff presented her claim only in terms of the collective bargaining agreement's bar on discrimination, a claim that established discrimination under the West Virginia Human Rights Act, W.Va. Code § 5-11-1 *et seq*, would not necessarily be preempted. To establish a prima facie case of employment discrimination, a plaintiff must show that: (1) the employee is a member of a protected class, (2) the employer made an adverse decision concerning the employee, and (3) but for the plaintiff's protected status, the adverse decision would not have been made. *Conaway v. Eastern Associated Coal Corp.*, 358 S.E.2d 423, 429 (1986). The plaintiff here has made nothing more than a general assertion of discrimination based on an unspecified disability. She has offered

no evidence of Mr. Harmon's disability to establish that he was a member of a protected class. Nor has she alleged any facts to establish that Mr. Harmon was discharged because of any disability. Accordingly, this cause of action must be dismissed for failure to state a claim upon which relief can be granted. Although the discrimination claim is a state-law claim, the necessity of evaluating the claim in the context of the § 301 action gives this Court jurisdiction to evaluate its validity. *Washington v. Union Carbide Corp.*, 870 F.2d 957 (1989)(Finding jurisdiction for federal court to address alleged state cause of action either as a pendent state claim or as a means of determining its own jurisdiction in a removed § 301 case.).

**Standing**

Having concluded that the plaintiff's state-law claims are either preempted by her § 301 claims or must be dismissed for failure to state a claim, the Court will consider the validity of the federal claims. In support of their motions for summary judgment, the defendants raise two issues that they argue prohibit the plaintiff's action from continuing.

First, the defendants contend that this action must be dismissed pursuant to Fed.R.Civ.P. 17 because the plaintiff is not a real party in interest and therefore lacks standing. Although the Fourth Circuit has not ruled on this issue, decisions of other federal appeals courts support the defendants' position. The Seventh Circuit dismissed the claim of an employee's spouse in a hybrid action brought under § 301, concluding that she had no standing to claim breach of the duty of fair representation because she was not a member of the bargaining unit and that she had no standing to sue the employer because she was not an employee or a third-party beneficiary of the collective bargaining agreement. *Souter v. International Union, United Auto., Aerospace and Agr. Implement*

*Workers of America, Local 72,* 993 F.2d 595, 597 n.1 (7th Cir. 1993). The *Souter* court reached that conclusion based in part on the Ninth Circuit's determination that a person who was never a member of the bargaining unit had no standing to sue the union for breach of the duty of fair representation because the union owed no duty to such a person. *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821 (1985). It is undisputed that the plaintiff here was never an employee of AEP or a member of the union. Although the plaintiff attempts to argue that she has standing as a beneficiary of her husband's interest in the collective bargaining agreement, she is not a third-party beneficiary to the agreement. The Fourth Circuit considered the issue of third-party beneficiaries in *Fairbain v. United Air Lines, Inc.*, 250 F.3d 237 (2001), where the plaintiff, who was an employee but not a member of the union, claimed the right to compulsory arbitration under the Railway Labor Act. The plaintiff argued that because as an employee he enjoyed some privileges that arose from the collective bargaining agreement, he had the right to enforce the agreement's arbitration provision. The court disagreed, noting that "of course, any collective bargaining agreement creates rights only between the union on behalf of employees represented by it and the employer." *Id*. at 243. Even though the plaintiff seemed to suggest that he was a third-party beneficiary, the court said, "he was not a member of the class of employees represented and was therefore not a direct or intended beneficiary." *Id*. The same is true of the plaintiff here. She is neither an employee nor a member of the bargaining unit and therefore cannot enforce any rights created under the agreement. As such, she has no standing to bring suit under its terms.

**Statute of Limitations**

The defendants also contend that the statute of limitations bars the plaintiff's claims under § 301. Hybrid claims brought by an employee against a company for its alleged breach of the collective bargaining agreement and against a union for its alleged breach of the duty of fair representation are governed by a six-month statute of limitations. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 157, 169 (1983). The statute of limitations begins to run when the cause of action accrues. *See Dement v. Richmond, Fredericksburg & Potomac Railroad Co.*, 845 F.2d 451, 460 (1988). The six-month statute of limitations has been said, generally, to accrue "when the plaintiff knows or should know that a violation of his rights has occurred." *Lee v. Consolidation Coal Co.*, 178 F.3d 1284 (4th Cir. 1999)(unpublished disposition citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)). As the Fourth Circuit panel in *Lee* recognized, "the claim [in hybrid suits] arises when the plaintiff could first successfully maintain a suit based on the cause of action, . . . or when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Id.* (citations omitted). *See also Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 303 (1983).

To determine when the cause of action accrues, the Court must look at the elements of that cause of action. In this case, prevailing against the employer and the union would require the plaintiff to not only show that the adverse action was contrary to the contract but also demonstrate a breach of duty by the union. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. at 165 (citing *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56 (1981)). Most courts addressing the issue have held that a hybrid claim, like the one presented here, accrues when the latter of the breach by the employer or the breach by the union occurs. *See Adams v. United Paperworkers Union,* 189

F.3d 1321 (11th Cir. 1999)(citing *Proudfoot v. Seafarer's International Union*, 779 F.2d 1558 (11th Cir. 1986)); *Cook v. Columbian Chemicals Co.*, 997 F.2d 1239 (8th Cir. 1993); *Adams v. Budd Co.*, 846 F.2d 428 (7th Cir. 1988); *Galindo v. Stoody Co.*, 793 F.2d 1502 (9th Cir. 1986); *Lohf v. Runyon*, 999 F.Supp. 1430 (D. Kan. 1998). Such a rule is consistent with the hybrid cause of action itself. Proof of each breach is necessary to support the cause of action. *See Vaca v. Sipes*, 386 U.S. 171, 186 (1967). Therefore, the claim cannot arise until both the company and the union have breached their respective duties. While the Fourth Circuit has not expressly stated such, the rule that a hybrid claim accrues when a plaintiff is aware of the latter of the company's breach and the union's breach is consistent with its decisions. *See Kolomick v. United Steelworkers of America*, 762 F.2d 354, 355 (4th Cir. 1985)(looking to the date of the breach by the union to determine when the statute of limitations begins to run where that breach occurs after the company's alleged breach of the collective bargaining agreement); *Lee v. Consolidation Coal Co.*, 178 F.3d 1284 (same); *see also*, *Ryder v. Philip Morris, Inc.*, 946 F.Supp. 422 (E.D. Va. 1996).

The relevant dates in this case are June 20, 2002, the date AEP discharged Mr. Harmon; July 15, 2002, the date Mr. Harmon resigned from the company; and June 18, 2004, the date this action was filed. Although Mr. Harmon's resignation suggests an end to the grievance process, making July 15, 2002, the date of the alleged breach by the union, there is a dispute over whether the union agreed to continue the process despite the resignation. The plaintiff contends that the union agreed to pursue the grievance through arbitration and that neither she nor Mr. Harmon knew that the process had not continued. In support of her contention, the plaintiff has submitted the affidavit of Charles M. Dalton, a grievance chairman for the local who attended the step three meeting. Mr. Dalton states that union officials told Mr. Harmon that they would continue to fight his termination.

Viewing the facts in the light most favorable to the plaintiff, the Court will assume that there was an understanding between the parties that the grievance would continue. The plaintiff argues that because of this, no statute of limitations should apply to her action against the union. But this fact does not eliminate the statute of limitations, it simply alters the date of the breach and therefore the date the cause of action accrued.

If union officials promised Mr. Harmon they would pursue the grievance process and failed to do so, it is reasonable to conclude that they breached their duty of fair representation on the date his right to continue the grievance expired. According to the process outlined in the collective bargaining agreement, if there is no resolution after the third step, the union is required to submit a request for arbitration within five days. If the union representative fails to meet this deadline and there is no mutual written consent to extend the deadline, the grievance is withdrawn. Accordingly, the breach by the union, if any, would have occurred six days after the step three meeting, or July 21, 2002, the day after the deadline for filing and therefore the date the grievance was withdrawn according to the terms of the contract. The statute of limitations, therefore, would have expired on January 21, 2003. The plaintiff argues, however, that neither she nor Mr. Harmon knew the union was not pursuing arbitration. The statute of limitations begins to run when a plaintiff knows or should have known of the facts giving rise to a claim. *Cox v. Stanton*, 529 F.2d at 50. This case falls into the category of cases in which the plaintiff should have known the relevant facts. A discharged worker seeking to pursue a grievance against his employer bears some responsibility for acquiring knowledge of the process and the requirements of the collective bargaining agreement. Even if the plaintiff did not know the union had not filed for arbitration by July 20, 2002, she should have known at some point well before this case was filed that no arbitration had taken place. *See Metz*

*v. Tootsie Roll Industries, Inc.*, 715 F.2d at 304. There is no scenario under these facts in which the statute of limitations could have extended to the date this suit was filed, nearly two years after Mr. Harmon's termination.

The plaintiff next argues that the statute of limitations should be tolled because of Mr. Harmon's death on January 14, 2003, before the six-month period expired. She does not explain why she did not know or should not reasonably have discovered the facts supporting a claim before the six-month period ended. Conversely, she does not explain what transpired later to bring those facts to her attention. Even if some equitable tolling were appropriate in this case, there are no facts to support extending the statute of limitations by 17 months, making the total period 23 months, or nearly four times the period allowed under the federal labor law. The facts of this case, even viewed in the light most favorable to the plaintiff, support no conclusion other than judgment for the defendants based on the statute of limitations.

**Exhaustion**

Finally, the defendants contend that even had the plaintiff's claim for breach of the duty of fair representation survived the other obstacles, it would have to be dismissed for failure to exhaust internal union remedies. In her opposition to the defendants' motion, the plaintiff misconstrues the requirement, arguing only that a failure to exhaust internal remedies against the employer should be excused. The exhaustion issue raised by the defendants, however, involves a separate procedure in which the plaintiff was required to file charges against union officers who violated their obligations before filing suit. In this case, the plaintiff failed to initiate, let alone exhaust, internal remedies against the union. Exhaustion is sometimes excused, however, such as in cases where the

union procedure could not reactivate a grievance or where the available remedies were inadequate. *Clayton v. International Union, United Auto., Aerospace and Agricultural Implement Workers of America,* 451 U.S. 679 (1981). Although that may be the situation here, because excusal of the exhaustion requirement would not affect the outcome of this case, the Court declines to draw a conclusion on this issue.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the plaintiff's motion to file a supplemental memorandum of law; **DENIES** the defendant's motion to strike the memorandum; **GRANTS** the defendants' motions for summary judgment on the amended complaint, with the exception of the state-law discrimination claim, which is **DISMISSED** for failure to state a claim; and **DENIES** as moot the defendants' prior motions to dismiss.

The Court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented parties and to publish it on the Court's web site.

ENTER: June 3, 2005

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE